CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 30 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| REGINALD A. MCGARY,<br>    Plaintiff, | Civil Action No. 7:08-cv-00418 |
| v. | **MEMORANDUM OPINION** |
| GENE M. JOHNSON, et. al.,<br>    Defendants. | By: Hon. James C. Turk<br>Senior United States District Judge |

Plaintiff Reginald A. McGary, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, McGary alleges that prison officials violated his constitutional rights when they acted with deliberate indifference to his serious medical needs after he was injured in an altercation with another inmate at Wallens Ridge State Prison ("WRSP"). He seeks monetary damages. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

I

McGary alleges the following events on which his claims are based. On November 4, 2007, McGary had an altercation with another inmate. He suffered what he believed to be "a broken right cheek bone from the bottom all the way to the orb of the eye." He was also bleeding from the nose and mouth. A nurse inspected his injuries at the scene of the altercation and ignored McGary's complaints about his cheek bone being "pushed in." Officials placed him into segregated confinement without providing him medical treatment. The next morning, he was still bleeding from

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

nose and mouth and filed an emergency grievance; a nurse deemed his condition to be a non-emergency. On November 6, 2007, Dr. Lee examined McGary's injuries from behind the door of his segregation cell. McGary showed the doctor his bloody sheets and complained that the broken cheekbone was causing him pain. The doctor prescribed a five-day regimen of Motrin and left. McGary awoke on November 8, 2007, and noticed "blood swirling in his right eye . . surrounding the pupil." He filed another emergency grievance, complaining about this new condition as well as the previous ones. A nurse denied the grievance, finding no emergency, stating that trauma like the condition he described is common after fights. Dr. Thompson examined McGary on November 12, 2007, and determined that McGary should have his cheek bone X-rayed as soon as the prison hired an X-ray technician.

Unsatisfied with the doctors' decisions about his condition, McGary filed a regular grievance on November 28, 2007, stating that his facial bones were broken and that he was experiencing pain and numbness in his jaw and under his eye. WRSP warden Bryan Watson denied the grievance as unfounded as "all final clinical judgments rest with the facility physician." McGary appealed to the regional director, stating that he still needed medical treatment. Again, his complaint was deemed unfounded.

McGary finally received an X-ray of his face on March 4 and again on March 18, 2008. Then, he waited two months to see the X-ray results. The technician who read the March 4 X-ray reported: "The study is underpenetrated. It would be difficult to exclude a facial fracture–suggest repeat as clinically indicated. No gross fracture is visualized." A doctor analyzed the March 18 X-ray and found: "Multiple radiographs demonstrate intact facial bones and normally pneumatized and clear paranasal sinuses. There is no evident fracture or orbital floor depression. No change since

March 4th, 2008." Her impression was: "Normal facial bones."

McGary is suing numerous defendants,[2] claiming that he has been deprived of his constitutional right to adequate medical treatment for his facial injuries. He asserts that his "injuries are visible to the untrained eye, that the right side of his face is 'slacked' and 'smoothed' of the cheekbones contours because the bone is not in its proper place" and his "injuries can be felt by the untrained hand."

II

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Claims alleging deprivation of medical treatment in prison arise under the Eighth Amendment prohibition against cruel and unusual punishment.[3] See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (finding that Eighth Amendment principles "establish government's obligation to provide medical care for those whom it is punishing by incarceration"). In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate deliberate indifference to a serious medical need. Estelle, 429 U.S. at 104. Thus, both a subjective and an objective component are needed. A medical need serious

---

[2]McGary sues the following individual defendants: Gene M. Johnson, Director of the Virginia Department of Corrections (VDOC); Bryan Watson, Warden of WRSP; Dr. Lee, physician at WRSP; Dr. Thompson, physician at WRSP; M. Stanford, RNCB at WRSP; Laila Holmes, M.D., a physician at a facility unknown to plaintiff; and defendants John and Jane Doe

[3]McGary also asserts that he is suing defendants for violations of his constitutional rights to equal protection and due process. However, he does not make any argument in support of this assertion, and the court finds no respect in which his allegations give rise to any cognizable claims under these constitutional principles.

enough to give rise to a constitutional claim involves a condition that, if left untreated, places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer v. Brennan, 511 U.S. 825, 832-35 (1994); Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of an objectively serious medical need for treatment and unreasonably disregarded it. Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). A disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Estelle, 429 U.S. at 105-06; Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To state a § 1983 medical claim against supervisory officials, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to known misconduct by the prison physicians. Miltier, 896 F.2d at 854; Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). Non-medical prison personnel may rely on the opinion of the medical staff as to the medical necessity for treatment and what the proper course of treatment is. Miltier, 896 F.2d at 855.

III

Under these principles, McGary's allegations fail to state any claim of constitutional significance. Taking the allegations in the light most favorable to McGary, he states at most a claim that the nurses and doctors who examined his injuries and his X-rays carelessly failed to diagnose

4

his cheek bone as being broken, when he, with no medical expertise, could clearly tell that it was broken. Such claims of negligence or medical malpractice are not actionable under § 1983.[4]

It is clear that no one ignored McGary's condition; rather, each of the medical staff members who were informed of or examined the injury decided, in his or her professional judgment, that the injury did not require an immediate X-ray or treatment. A nurse examined McGary on the scene of the altercation and made a medical judgment that no immediate treatment was medically necessary. A nurse received his emergency grievance about his continued bleeding and made a medical judgment that no emergent treatment was necessary. Dr. Lee examined his injuries two days after the altercation and made a medical judgment that pain relief medication was sufficient treatment at that time. The nurse who received McGary's grievance about the blood in his eye rightfully relied on the doctor's prior decision regarding the appropriate course of treatment and her own experience with trauma injuries to make her own decision that no different or additional treatment was necessary at that time. Dr. Thompson examined the injury and made a medical judgment that no emergent treatment was necessary, but that an X-ray should be provided whenever the equipment and technician were available. The X-ray technicians did not find any gross fractures, and the more recent X-ray, read by a medical doctor, indicated no fractures at all.

This court may not second guess the appropriateness of any of these medical decisions. The court is not in the business of telling doctors how to treat injuries. Moreover, supervisory officials such as the VDOC director and the warden without medical expertise of their own rightfully relied

---

[4]To the extent that McGary's allegations may state some possible claim of medical malpractice under state law, such a state law claim is not independently cognizable under § 1983. Furthermore, the court declines to exercise supplemental jurisdiction over any such state law claims, pursuant to 28 U.S.C. § 1367(c).

5

on the decisions of the medical staff as to the appropriate course of treatment. McGary's disagreement with the defendants' medical judgments–based on his personal opinion that his cheek bone was broken and required an immediate X-ray and treatment–is simply not actionable under § 1983. Moreover, McGary's opinion is refuted by specific medical evidence: the second and most recent X-ray results finding that his facial bones are normal.

Based on the foregoing, McGary fails to demonstrate that anyone acted with deliberate indifference to his serious medical needs. He received evaluation and such treatment as defendants deemed medically necessary, and he was not entitled to additional or different treatment based merely on his self-diagnosis or desire for specific tests or treatment. Accordingly, the court finds that plaintiff's complaint must be dismissed for failure to state a claim, pursuant to §1915A(b)(1).[5] An appropriate order shall be entered this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 30th day of July, 2008.

_____
Senior United States District Judge

---

[5]McGary has also filed a motion for appointment of counsel. Only under exceptional circumstances does the court request an attorney to represent an indigent, civil plaintiff who has a colorable claim, but lacks the capacity to present it. Gordon v. Leeke, 574 F.2d 1147, 1173 (4th Cir. 1978); Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975). As McGary's particularized allegations demonstrate that he has no actionable claim under § 1983, the court does not find that appointment of counsel is warranted.